UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 14-00065-02 |
| VERSUS | JUDGE ROBERT G. JAMES |
| ANTHONY SEGURA | MAG. JUDGE KAREN L. HAYES |

**WRITTEN REASONS FOR RULING ON OBJECTIONS TO PRE-SENTENCE REPORT**

A sentencing hearing in the above-referenced matter was conducted on January 5, 2015, before the undersigned. At that time, the Court considered and ruled on the Government's and Defendant Anthony Segura's ("Segura") objections to the Pre-Sentence Report. The Court now issues these written reasons for its rulings.

**Government's Objection:** The Government objected to paragraph 28 of the Pre-Sentence Report, contending that Segura should receive an enhancement for use of a firearm in connection with the kidnapping based on the statement of the victim, Clifford H. Johnson (identified as CHJ in the Pre-Sentence Report).

The United States Sentencing Commission Guidelines provide for a base offense level of 32 for the offense of kidnapping. U.S.S.G. § 2A4.1. However, the Guideline also provides for enhancements if specific offense characteristics are present. Pursuant to U.S.S.G. § 2A4.1(b)(3), the base offense level should be increased by two levels if "a dangerous weapon was used." The comments following the Guideline explain that a dangerous weapon was used if it was "discharged" or it was "otherwise used" in the way defined in the commentary to U.S.S.G. § 1B1.1 application instructions. U.S.S.G. § 2A41. n. 2. That application note explains that "otherwise used" means

that "the conduct did not amount to the discharge of the firearm but was more than brandishing, displaying, or possessing the firearm or other dangerous weapon." U.S.S.G. § 1B1.1 n.1(I).

On November 16, 2013, Segura and his Co-Defendant Aldo Cantu kidnapped the victim, Clifford H. Johnson ("CHJ"), and transported him from Pine Bluff, Arkansas, to Louisiana to hold him for ransom, reward, or other purpose, in violation of 18 U.S.C. § 1201(a)(1). The facts are recounted fully in the Pre-Sentence Report.

At the hearing, FBI Agent Palmer Allen ("Agent Allen") testified. Agent Allen did not interview CHJ, but was provided information by another FBI Agent who did. Additionally, the Form 302 summary of the agent's interview of CHJ was previously placed in the record. Agent Allen testified that CHJ said that he had been struck by a firearm, but CHJ did not identify the firearm, nor did he complain of or seek medical treatment for any physical injury resulting from his alleged pistol whipping. Agent Allen further testified that CHJ's cousin, Arthur Johnson ("A. Johnson") claimed that he thought he heard CHJ being struck while A. Johnson was in the other room, but could not see him.[1] However, as the Probation Officer previously noted in the Pre-Sentence Report, Francisco Segura, who was also involved in the kidnapping, told investigators that he did not see anyone point a gun at CJH, harm him, or threaten to kill him.

The Court was thus presented with double, if not triple, hearsay about CJH's alleged mistreatment. CHJ himself did not testify, although he is in custody in Texas on unrelated charges and could have been brought to Court. Having reviewed the Pre-Sentence Report and having

---

[1] The Government previously contended that CJH had said that an unidentified male had placed a live round in a revolver, spun it, closed the chamber and began questioning him. When the unidentified male was not satisfied with CJH's responses, the male supposedly held the revolver to Johnson's head and pulled the trigger, but hit on an empty chamber. However, Agent Allen did not testify about this alleged incident.

considered Agent Allen's testimony and the other record evidence, the Court agreed with the Probation Officer that there was insufficient evidence to apply the enhancement, particularly given CHJ's own role in the drug trafficking leading up to these events. Like Defendants and Francisco Segura, Johnson had motivation to be less than truthful. Without live testimony to gauge CHJ's credibility[2] and given the lack of injury to him, the Court found that the Government had not shown that a dangerous weapon was "used," rather than "brandished." The Court found no revision to the Pre-Sentence Report was warranted, and the Government's Objection was DENIED.

**Segura's Objection #1:** Segura objected to the 6-level enhancement in paragraph 34 of the Pre-Sentence Report in which he was held accountable for the ransom demand, although it was not made to a third party.

U.S.S.G. § 2A4.1(b)(1) provides for a 6-level enhancement "[i]f a ransom demand or a demand upon the government was made." The Guidelines do not define ransom demand, nor does the commentary provide any guidance.

However, the United States Court of Appeals for the Fifth Circuit recently discussed the ransom enhancement in a decision which issued after the Pre-Sentence Report. *See United States v. Fernandez*, 770 F.3d 340 (5th Cir. 2014). The Fifth Circuit explained that it has "not explicitly defined the term 'ransom' in U.S.S.G. § 2A4.1(b)(1) in a published opinion," but that, in an unpublished opinion, the court has "interpreted the term according to its plain meaning to denote 'a consideration paid or demanded for the release of someone or something from captivity.'" *Id.* at 343 (additional internal quotation marks omitted) (quoting *United States v. Pantoja–Rosales*, 494

---

[2]CHJ has several prior drug arrests. At the time of the kidnapping there was a warrant for his arrest from Texas, and he remains incarcerated.

F. App'x 453, 456 (5th Cir. 2012) (quoting Merriam–Webster, http://www.merriam-webster.com)). The Fifth Circuit then adopted the definition in its unpublished opinion, agreeing with its "sister circuits that 'the ransom enhancement applies anytime a defendant demands money from a third party for a release of a victim, regardless of whether that money is already owed to the defendant.'" *Id.* (quoting *United States v. Sierra–Velasquez*, 310 F.3d 1217, 1221 (9th Cir. 2002) (other citations omitted)). In the *Fernandez* case, the district court properly applied the ransom enhancement "because it was foreseeable when he participated in the kidnapping conspiracy that money would be demanded for the release of the victim" (even though in *Fernandez*, the defendants actually kidnapped the wrong victim and made a different demand than that originally contemplated). *Id.*

In this case, the Government again relied on the testimony of Agent Allen, who says that CHJ told the Texas agent that his kidnappers demanded the return of the powder cocaine stolen from them or $29,000 in cash. Agent Allen testified that this demand was supposedly made to CHJ and his cousin, A. Johnson. A. Johnson also allegedly told the Texas agent that he had contemplated selling land to come up with the money.

However, the ransom demand to A. Johnson had to be made while he was in the hotel room in Pine Bluff. CHJ was kidnapped around 11:30 p.m. by a Mexican male and a black male and taken to the hotel room, where Defendant, his Co-Defendant, A. Johnson and another Mexican male were located. A. Johnson left the hotel between 1:30 and 2:00 a.m. of his own volition, according to CHJ's statement. During the short time A. Johnson was in the hotel room, Agent Allen testified that the kidnappers spoke mostly in Spanish, which neither CHJ nor A. Johnson understood. During this same time, CJH and the kidnappers were supposedly using drugs and drinking.

Agent Allen also admitted that there was no evidence that CHJ or A. Johnson made any

phone calls to secure drugs or cash. A. Johnson took no affirmative steps to collect any money, nor did he report the kidnapping.

Finally, the Court reviewed the 302 summary of CHJ's interview by the FBI agent in Texas. There is no mention in that summary of payment of $29,000.00 or return of the drugs. The Government did not provide the 302 summary of A. Johnson's interview. The Texas FBI agent, although present in the courtroom, was not called to testify.

Based on these record facts, the Court found the evidence was insufficient to hold Segura accountable for a ransom demand allegedly made to A. Johnson in the 1 ½ -2 hours he was in the Pine Bluff hotel. Accordingly, the Court GRANTED Segura's Objection #1, and the Pre-Sentence Report was AMENDED to reduce his offense level by 6 levels.

**Segura's Objection #2:** Segura objected to paragraphs 30 and 37 of the Pre-Sentence Report, contending that his offense level should not be enhanced for obstruction of justice because the materially false statements did not significantly obstruct or impede the investigation. Alternatively, Segura argues that, since he was also being sentenced on a charge of false statement to an FBI agent, application of this enhancement constituted impermissible double counting.

Under U.S.S.G. § 3C1.1, a defendant's offense level is enhanced two levels if he has "(A) . . . willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." Application note 2 instructs that "[t]his provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide

information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision."

In application note 4, there are listed examples of the types of conduct to which this enhancement is intended to apply. U.S.S.G. § 3C1.1 n.3. The enhancement applies if a defendant provided "a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." U.S.S.G. 3C1.1 n.4(G). Application Note 6 defines "[m]aterial" as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." On the other hand, a defendant would not typically receive an enhancement for "making false statements, not under oath, to law enforcement officers, unless Application Note 4(G) . . . applies." U.S.S.G. § 3C1.1 n.5(B). The Court "ordinarily can appropriately" sanction the conduct by its determination of a "particular sentence within the otherwise applicable guideline range." U.S.S.G. § 3C1.1 n.3.

It is undisputed in this case that Segura made materially false statements to FBI agents Allen and William Chesser on November 16, 2013. He pled guilty to Count 5, which charged him with that crime. However, in the context of Segura's separate kidnapping charge, the Guidelines instruct that the enhancement applies only if the materially false statement "significantly obstructed or impeded the official investigation or prosecution of the instant offense."

Agent Allen testified that he told Segura it was a crime to lie to an FBI Agent. After this admonition, Segura told Agents Allen and Chesser that he and Co-Defendant had been to Diamond Jack's casino in Shreveport. According to Segura, CHJ attempted to rob them at gunpoint when they stopped at a gas station. Segura also denied ever being in Arkansas. However, Agent Allen knew Segura was lying at the time Segura made these statements.

After Segura gave his statement, Agent Allen took several steps to show the statements were false. He got a search warrant on the vehicle used in the kidnapping, a search warrant for Segura's and his Co-Defendant's property seized at the time of their arrest, and a search warrant for the hotel; obtained a grand jury subpoena for a money gram from Wal-Mart and for the hotel in Pine Bluff; conducted several interviews in Arkansas of CHJ's girlfriend; and obtained cell phone records. Agent Allen testified that Segura's false statement impeded the investigation because of the steps Agent Allen had to take to show that the statement was false.

After considering Agent Allen's testimony, the Court found that the Government had offered insufficient evidence to show that Segura's false statements to law enforcement on November 16, 2013, obstructed or impeded the investigation or prosecution. Agents Allen and Chesser were aware at the time Segura made his statement that the statement was false. Further, all the steps identified by Agent Allen were the same steps he would have taken to support the Government's prosecution of the crime of false statement to an FBI agent.

Moreover, even if the enhancement were otherwise applicable, Segura's conduct in making materially false statements to the agents was already addressed. Segura pled guilty to the separate count of making a false statement to an FBI agent. Applying U.S.S.G. § 3D1.1, the Probation Officer properly grouped Segura's two counts to determine his Guideline range of imprisonment. Although Segura's sentence on his two counts of conviction was ordered to run concurrently, the Court had "the latitude to impose added punishment by sentencing toward the upper end of the range authorized for the most serious offense." U.S.S.G. § 3D1.4 n.2. .

Accordingly, Segura's Objection #2 was GRANTED, and his offense level was reduced by two levels.

**Imposition of Non-Guideline Sentence:** Pursuant to 18 U.S.C. § 3553(a), the Court considered, as in each case, whether the recommended Guideline range of imprisonment reasonably addressed Segura's criminal conduct and adequately reflected (1) the nature and circumstances of the offense and the history and characteristics of the Defendant; (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the Defendant; and (D) provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) pertinent sentencing commission policy statements; (4) the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct; and (5) the need to provide restitution to any victims of the offense.

In this case, the Court found that the recommended Guideline range did not reasonably address the real conduct of Segura that underlay his crime. Instead, the Court ruled that a term of imprisonment beyond the upper limits of the recommended Guideline range was necessary to reasonably address the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and to afford adequate deterrence to criminal conduct. Specifically, though the Court did not believe the Government met its burden of establishing the enhancements for the ransom demand and for obstruction of justice, the Court had grave concerns about the dangerous nature of the crime and the use of drugs during the commission of the kidnapping.

Accordingly, the Court imposed a term of imprisonment of 150 months on Count 1.

MONROE, LOUISIANA, this 9th day of January, 2015.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE